STATE OF CONNECTICUT *v.* JAMES T. WILLIAMS
(AC 19680)

Spear, Pellegrino and Peters, Js.

Argued June 9—officially released November 7, 2000

*Felix Esposito*, special public defender, for the appellant (defendant).

*Peter Anthopolos*, special deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Laura DeLeo*, assistant state's attorney, for the appellee (state).

*Opinion*

PELLEGRINO, J. The defendant, James T. Williams, appeals from the judgment of conviction rendered following his guilty plea under the *Alford* doctrine[1] to the crimes of attempt to commit assault in the second degree in violation of General Statutes §§ 53a-49 and 53a-60, and reckless burning in violation of General Statutes § 53a–114. He claims that the trial court improperly accepted his plea because he was not apprised of the elements of the crimes and, therefore, his plea was not made knowingly and voluntarily. We affirm the judgment of the trial court.

---

[1] *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

The following facts and procedural history are relevant to our resolution of this claim. The court accepted the defendant's plea of guilty to the crimes charged. He later was sentenced, within the parameters of his plea agreement, to six years incarceration, suspended after thirty months, and three years probation.[2] He did not seek to withdraw his plea at that time.

The underlying facts that gave rise to the criminal charges, although not admitted by the defendant, are not in dispute. Following an argument with the defendant, the victim, while resting on her bed, felt something hot in the area of her genitalia. When she raised her head, she saw the defendant holding a cigarette lighter to her groin area and observed that her pants were on fire. There were burn marks on her pants and on the bedclothes. At the time of this incident, the victim's five children were asleep in another bedroom.

During the plea canvass conducted by the court at the time the defendant made his *Alford* plea, the defendant was apprised of all of his constitutional rights, which he acknowledged he was voluntarily waiving, and the maximum penalties for the charges to which he pleaded. He was not, however, advised of the elements of the crimes with which he was charged, nor did the court conduct an inquiry as to whether he was aware of them. The state does not dispute that the canvass was devoid of any specific reference to the elements of the crimes, and it is this issue that is the subject of the present appeal.

The defendant did not preserve his claim for review on appeal. Under our procedure, to preserve his claim

[2] The agreement called for a maximum sentence of six years incarceration, suspended after three years, with three years of probation. The defendant, under the plea agreement, was permitted to argue for less time, but the court did explain at the time the plea was accepted: "You may get less time than that maximum sentence. You may not."

after the plea was accepted, the defendant would have to move to withdraw his plea. A defendant "shall" be allowed, under the provisions of Practice Book § 39-26, to withdraw his or her plea on proof of one of the grounds listed in Practice Book § 39-27. Practice Book § 39-27 (1) permits a plea to be withdrawn if it was accepted without substantial compliance with Practice Book § 39-19. Practice Book § 39-19 provides, inter alia, for an explanation of the "nature of the charge . . . ." The defendant did not invoke the provisions of § 39-26, however, and, therefore has not preserved his claim of a violation of § 39-19. Practice Book § 39-26 expressly provides in relevant part: "A defendant may not withdraw his or her plea after the conclusion of the proceeding at which the sentence was imposed." The defendant here did not seek to withdraw his plea prior to sentencing.

The defendant concedes that he failed to preserve his right to review of his claim on appeal, yet urges that we review it under the doctrine enunciated in *State v. Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), which is reserved for those extraordinary and exceptional circumstances when a denial of review would deprive a defendant of a fundamental constitutional right. In *Golding*, our Supreme Court held that "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. (Emphasis in original.) Id. "The first two questions relate to whether a defendant's claim is reviewable, and the last two relate

to the substance of the actual review." *State* v. *Newton*, 8 Conn. App. 528, 531, 513 A.2d 1261 (1986).

On appeal, the claim for review must meet all four prongs of the *Golding* analysis to be successful. *State* v. *Krzywicki*, 39 Conn. App. 832, 836, 668 A.2d 387 (1995). "We are free, however, to dispose of the claim by focusing on the condition that appears most relevant under the circumstances of the case." *State* v. *Andrews*, 29 Conn. App. 533, 537, 616 A.2d 1148 (1992), cert. denied, 224 Conn. 924, 618 A.2d 531 (1993); see *State* v. *Pinnock*, 220 Conn. 765, 778, 601 A.2d 521 (1992). Because the defendant failed to demonstrate that a constitutional violation clearly exists and clearly deprived him of a fair trial, his claim fails to satisfy the third condition of *Golding*. See *State* v. *Coleman*, 52 Conn. App. 466, 473, 727 A.2d 246, cert. denied, 249 Conn. 902, 732 A.2d 776 (1999).

The defendant argues that the court, by failing to advise him of the elements of the crimes with which he was charged, deprived him of a fundamental constitutional right and that he is, therefore, entitled to review under *Golding*.Our Supreme Court, in *State* v. *Badgett*, 200 Conn. 412, 418, 512 A.2d 160, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986), held that "[t]o the extent that the defendant's claim implicates the failure of the trial court to apprise him of the constitutionally mandated requirements for a valid plea . . . his claim is properly reviewable despite the absence of a timely motion to withdraw the plea. . . . While the federal constitution requires that the record of the plea canvass indicate the voluntariness of any waiver of . . . three core constitutional rights[3] . . . *it does not*

---

[3] This refers to the right, enunciated in *Boykin* v. *Alabama*, 395 U.S. 238, 243, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969), to know that a plea operates as a waiver of the fundamental constitutional rights regarding a jury trial, confrontation and self-incrimination. According to *Boykin*, the trial court must inform the defendant of these rights prior to accepting a plea for the plea to be knowingly, voluntarily and intelligently made. Id.

*require that the trial court go beyond these constitutional minima. . . .* A defendant can voluntarily and understandingly waive these rights without literal compliance with the prophylactic safeguards of Practice Book [§§ 39-19 and 39-20]. Therefore . . . *precise compliance with the provisions [of the Practice Book] is not constitutionally required.* [The court's analysis, therefore, should] focus on whether the federal constitutional principles . . . were satisfied rather than on meticulous compliance with the provisions of the Practice Book." (Citations omitted; emphasis added; internal quotation marks omitted.)

In this case, the defendant was advised of his core constitutional rights.[4] The defendant nonetheless argues that we should not read *Badgett* as limiting the constitutional requirements to only three so called core constitutional rights. He argues that this court has, in considering claims of deficient plea waivers, expanded the "constitutional requirements." He points to *State* v. *Loyd*, 8 Conn. App. 491, 540 A.2d 1058 (1986), cert. denied, 203 Conn. 801, 522 A.2d 293 (1987), *State* v. *Joyner*, 6 Conn. App. 469, 506 A.2d 561 (1986), and *State* v. *Alicea*, 41 Conn. App. 47, 54, 674 A.2d 468 (1996), in support of this contention.[5]

---

[4] During the plea canvass, the court asked the defendant if he understood that "you're giving up certain legal rights, among them your right to a trial before a court or a jury . . . your right not to be compelled to incriminate yourself . . . [and] your right to confront and cross-examine witnesses, present your own witnesses, testify yourself . . . [and] to present any defense to these charges. Do you understand you're waiving these rights and [that] no trial will take place?" The defendant responded: "Right."

[5] Both *Joyner* and *Alicea* concerned appeals from the denial of a motion to withdraw a guilty plea. There was no need, therefore, to request review under *Golding*. The issue in *Joyner* was whether the trial court complied with the provisions of our rules of practice. This court found in *Joyner* that the trial court had not complied with the rules of practice and remanded the matter to the trial court. Similarly, *Alicea* concerned an appeal from the denial of a motion to withdraw a guilty plea where the record indicated that the trial court had not complied with the rules of practice. *State* v. *Alicea*, supra, 41 Conn. App. 53–54.

We are bound by our Supreme Court's decision in *Badgett*, which requires us to focus our inquiry "on whether the federal constitutional principles of [*Boykin* v. *Alabama*, 395 U.S. 238, 243, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969)] were satisfied rather than on meticulous compliance with the provisions of the Practice Book." *State* v. *Badgett*, supra, 200 Conn. 418. *Boykin* requires that before accepting a defendant's plea, a trial court must inform him of three core constitutional rights: His right to be free of compulsory self-incrimination, and his rights to a jury trial and to confront his accusers. *Boykin* v. *Alabama*, supra, 243; *State* v. *Badgett*, supra, 418. Neither *Boykin* nor *Badgett*, however, requires a trial court to inform a defendant of the elements of the charges against him.

Therefore, the defendant cannot prevail on his unpreserved claim unless he establishes that the court's failure to inform him of the elements of the crimes with which he was charged violated one of the three core constitutional rights identified in *Boykin* and deprived him of a fair trial. In *State* v. *Loyd*, supra, 8 Conn. App. 494B, the trial court's failure to inform the defendant of the minimum sentences for each of the crimes with which he was charged was of constitutional dimension because the "essential holding of *Boykin* is that an accused must be equipped with a full understanding of what a guilty plea connotes and of its consequences." Thus, in *Loyd* it was shown under the circumstances of that case that the requirement of Practice Book § 711 (2), now § 39-19 (2), that the court discuss with the defendant the mandatory minimum sentence for the crime charged was of constitutional magnitude.

The United States Supreme Court has stated that where a trial court does not inform a defendant during a plea proceeding about the elements of the crime charged, "even without such an express representation, it may be appropriate to presume that in most cases

defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit." *Henderson* v. *Morgan*, 426 U.S. 637, 647, 96 S. Ct. 2253, 49 L. Ed. 2d 108 (1976); see *Marshall* v. *Lonberger*, 459 U.S. 422, 436–37, 103 S. Ct. 843, 74 L. Ed. 2d 646 (1983) ("under *Henderson*, [defendant] must be presumed to have been informed, either by his lawyers or at one of the presentencing proceedings, of the charges on which he was indicted"); *Oppel* v. *Meachum*, 851 F.2d 34, 38 (2d Cir.), cert. denied, 488 U.S. 911, 109 S. Ct. 266, 102 L. Ed. 2d 254 (1988) ("under *Henderson* v. *Morgan* [supra, 647], it is normally presumed that the defendant is informed by his attorney of the charges against him and the elements of those charges").

In this case, there seems to be little question that the defendant was aware of the nature of the charges and their elements in reaching his decision to enter an *Alford* plea. It is apparent from our review of the record that the defendant here, in deciding to enter an *Alford* plea, was apprised by his counsel of the elements of the offenses with which he was charged so as to demonstrate to him that the state could prove each of the elements beyond a reasonable doubt.[6] For the defendant to arrive at that decision, he must have been aware of the factual claims of the victim and decided that her testimony would satisfy all of the elements of the offenses with which he was charged.

Having the advice of his attorney, the defendant believed that the state had enough evidence to convict

---

[6] During the plea canvass, the defendant stated himself or through his counsel that, inter alia, he (1) had had enough time to speak with his attorney, (2) understood the factual basis for the charges, (3) understood that by entering a plea under *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), he was waiving his privilege against compelled self-incrimination and his rights to confront and cross-examine witnesses, and to have a trial by jury, (4) was satisfied with the representation provided by his attorney and (5) knew of no reason why the court should not accept the defendant's guilty plea.

him. Assuming that a jury would believe the testimony of the victim, even though he disagreed with the victim's version of the facts, the defendant was satisfied that he would be convicted and therefore entered his *Alford* plea. He understood that the court's acceptance of the plea would constitute a finding of guilt. The defendant was aware of the state's allegations and asked through his counsel that the facts not be read aloud in court because "[h]e's aware of what the facts are. I'd rather save him the embarrassment and the victim the embarrassment." His plea was accepted and he was found guilty of the offenses charged on January 29, 1999. The matter was then continued for the presentence report and he was sentenced on May 14, 1999, almost three months after he entered his plea. Sufficient time had elapsed for the defendant to consider the plea bargain and its consequences. Despite this time lapse and the opportunity for reflection, the defendant did not seek to withdraw his plea. It was only after he was sentenced that the defendant filed the present appeal and raised the claim that the trial court failed to make specific reference to the elements of the crimes with which he was charged.

The plea canvass was comprehensive. After the defendant entered his plea, the court stated: "Now, once again, I've read the facts of the [police] report . . . . I've read the victim's statement. I understand that you disagree with some of what is being said against you, but what you've decided to do is . . . accept this recommendation for a [capped] sentence of [six years incarceration, suspended after three years, with three years of probation], rather than risk a trial where you might get convicted and spend more time in jail than that which is being recommended as a maximum. Is that why you're pleading guilty, sir?" The defendant answered: "Yes." The court then asked the defendant whether he knew "of any reasons why [the court] should

not accept the plea," to which the defendant's attorney answered: "No." Accordingly, the defendant is not able to establish that a constitutional violation clearly exists and clearly deprived him of a fair trial. He, therefore, cannot satisfy the third prong of *Golding* and cannot prevail on appeal.

The judgment is affirmed.

In this opinion the other judges concurred.