## STATE OF CONNECTICUT *v.* LEONARDO LOPEZ
### (AC 22290)

Dranginis, Flynn and Bishop, Js.

Argued October 23, 2002—officially released May 27, 2003

*Wesley S. Spears*, for the appellant (defendant).

*James M. Ralls*, assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Judith H. Rothschild*, assistant state's attorney, and for the appellee (state).

*Opinion*

DRANGINIS, J. The defendant, Leonardo Lopez, appeals from the judgments of conviction, rendered after his guilty plea under the *Alford* doctrine,[1] to reckless endangerment in the first degree for having live extension cords between two properties while children were in the area in violation of General Statutes § 53a-63,[2] to failing to abate a septic system overflow in violation of General Statutes § 19a-36,[3] to violating the fire code (six counts) in violation of General Statutes § 29-295[4] and to violating the health code (five counts) in violation of General Statutes § 47a-52.[5] On appeal, the

[1] "See *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970). A defendant who pleads guilty under the *Alford* doctrine does not admit guilt but acknowledges that the state's evidence against him is so strong that he is prepared to accept the entry of a guilty plea." (Internal quotation marks omitted.) *State* v. *Webb*, 62 Conn. App. 805, 807 n.1, 772 A.2d 690 (2001).

[2] General Statutes § 53a-63 (a) provides: "A person is guilty of reckless endangerment in the first degree when, with extreme indifference to human life, he recklessly engages in conduct which creates a risk of serious physical injury to another person."

[3] General Statutes § 19a-36 (a) provides in relevant part: "The Commissioner of Public Health shall establish a Public Health Code and, from time to time, amend the same. The Public Health Code may provide for the preservation and improvement of the public health. Drainage and toilet systems to be installed in any house or building arranged or designed for human habitation . . . ."

[4] General Statutes § 29-295 provides: "Any person who violates any provision of the Fire Safety Code shall be fined not less than two hundred nor more than one thousand dollars or imprisoned not more than six months or both."

[5] General Statutes § 47a-52 (c) provides: "When any defect in the plumbing, sewerage, water supply, drainage, lighting, ventilation, or sanitary condition of a rented dwelling, or of the premises on which it is situated, in the opinion of the department of health of the municipality wherein such dwelling is located, constitutes a danger to life or health, the department may order the responsible party to correct the same in such manner as it specifies. If the order is not complied with within the time limit set by the department, the person in charge of the department may institute a civil action for injunctive relief, in accordance with chapter 916, to require the abatement of such danger."

defendant claims that the trial court improperly concluded (1) that his plea was knowingly and voluntarily made, and (2) that he breached his plea agreement. The defendant further claims that he was denied effective assistance of counsel. We affirm the judgments of the trial court.

The record and transcript of the proceedings before the trial court reveal the following relevant facts. The defendant is the owner of three residential buildings located in Waterbury. On April 9, 2001, the defendant pleaded guilty under the doctrine of *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), to reckless endangerment and various fire code and health code violations that occurred between October, 1999, and October, 2000.[6] The court canvassed the

[6] In October, 1999, an inspector of the Waterbury fire department conducted an inspection of 289 Hillside Avenue and found twelve fire codes violations consisting of failure to have handrails, illumination for exit ways, a minimum of six feet, eight inches headroom in the front stairwell, and one hour resistance rating for wall and stairs. On February 28, 2000, the fire inspector reinspected the premises to determine if the violations had been abated. Between the first and last inspections, the fire department sent the defendant three certified letters advising him that the listed violations had to be corrected within fifteen days and warning that noncompliance would subject him to penalties under General Statutes § 29-295. On March 2, 2000, the defendant was served with a copy of an arrest warrant for his failure to fix the repairs.

In August, 2000, an inspector of the Waterbury health department conducted an inspection of 17 Easton Avenue and found an active sewage overflow. A letter dated August 8, 1998, was sent to the defendant, informing him that he was in violation of Public Health Code; see General Statutes § 19a-36; and that he had one day to clear the blocked sewage line. The defendant failed to abate the septic system overflow and later was charged with one count of violating § 19a-36.

In September, 2000, the defendant was charged with one count of reckless endangerment in violation of General Statutes § 53a-63, for using a live extension cord wire to supply power from one of his houses to another.

In October, 2000, an inspector from the Waterbury health department cited the defendant with five Public Health Code violations at 20 Dikeman Street. The defendant received notice of the violations, but did not abate them and then was charged with five counts of violating General Statutes § 47a-52.

defendant in accordance with Practice Book §§ 39-19 and 39-20,[7] and found the plea to be entered knowingly and voluntarily. The plea of guilty to the violations was entirely conditioned on the defendant's abating the violations as well as the payment of a $3000 contribution to a nonprofit charity. The parties further agreed that if the defendant abided by the conditions of the plea agreement, and the court so found, the state would enter a nolle prosequi to the charges; if he failed to abide by the agreement, he would serve a two year prison sentence suspended after eighty four days, plus probation. At the conclusion of the proceeding, the court set July 2, 2001, as the date by which the defendant had to complete the repairs.

Upon his return to court, the defendant had failed to take advantage of that time to correct the housing code violations cited by the fire department and health department. The court raised the defendant's bond to $40,000 with the understanding that he had until August

---

[7] Practice Book § 39-19 requires a trial court personally to address the defendant in open court to determine that the defendant understands, in relevant part:

"(1) The nature of the charge to which the plea is offered;

"(2) The mandatory minimum sentence, if any;

"(3) The fact that the statute for the particular offense does not permit the sentence to be suspended;

"(4) The maximum possible sentence on the charge . . . and

"(5) The fact that he or she has the right to plead not guilty . . . and the fact that he or she has the right to be tried by a jury or a judge and that at that trial the defendant has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him or her, and the right not to be compelled to incriminate himself or herself."

Practice Book § 39-20 provides in relevant part: "The judicial authority shall not accept a plea of . . . nolo contendere without first determining, by addressing the defendant personally in open court, that the plea is voluntary and is not the result of force or threats or of promises apart from a plea agreement. The judicial authority shall also inquire as to whether the defendant's willingness to plead . . . nolo contendere results from prior discussions between the prosecuting authority and the defendant or his or her counsel."

8, 2001, to repair the remaining violations. The defendant still did not successfully complete the repairs, and on August 14, 2001, the court sentenced him to a term of two years imprisonment, suspended after eighty four days, followed by three years of probation. The defendant did not seek to withdraw his plea at any point. This appeal followed.

I

The defendant first claims that the court improperly accepted his guilty plea because it was not made knowingly, intelligently and voluntarily. Specifically, the defendant argues that the court did not adequately explain the terms of the plea agreement and improperly accepted his plea without first ascertaining whether he understood the elements of the charged offenses. He further argues that the court failed to inquire as to whether his counsel had advised him of the nature of each offense.[8] We do not agree.

Because he did not attempt to withdraw his plea prior to sentencing, the defendant did not preserve his claim for appellate review. Accordingly, he requests that we review his claims under *State* v. *Evans*, 165 Conn. 61, 327 A.2d 576 (1973), as refined by *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[9] We conclude

---

[8] Specifically, the defendant argues that he was advised of the elements of reckless endangerment only and not of the housing code or fire code violations.

[9] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

that the defendant has satisfied the first two prongs of *Golding* because the record is adequate for review, and the claim that his plea was not knowingly and voluntarily made is of constitutional magnitude. See *State* v. *Badgett*, 200 Conn. 412, 418, 512 A.2d 160, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986). We conclude, however, that his claim must fail because he has not demonstrated that the alleged due process violation "clearly exists and clearly deprived [him] of a fair trial . . . ." *State* v. *Golding*, supra, 240.

An overview of the law governing guilty pleas is necessary for our disposition of the defendant's claim. "It is axiomatic that the trial court judge bears an affirmative, nondelegable duty to clarify the terms of a plea agreement. [U]nless a plea of guilty is made knowingly and voluntarily, it has been obtained in violation of due process and is therefore voidable." (Internal quotation marks omitted.) *State* v. *Winer*, 69 Conn. App. 738, 745, 796 A.2d 491, cert. denied, 261 Conn. 909, 806 A.2d 50 (2002). The United States Supreme Court delineated the requirements for a valid guilty plea in *Boykin* v. *Alabama*, 395 U.S. 238, 243-44, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969). See *State* v. *Benitez*, 67 Conn. App. 36, 42, 786 A.2d 520 (2001), cert. denied, 259 Conn. 922, 792 A.2d 855 (2002). "*Boykin* requires that before accepting a defendant's plea, a trial court must inform him of three core constitutional rights: His right to be free of compulsory self-incrimination, and his rights to a jury trial and to confront his accusers. . . . Those rights also are guaranteed by the constitution of Connecticut, article first, § 8, as amended by article seventeen of the amendments."[10] (Citations omitted; internal

---

[10] "The constitution of Connecticut, article first, § 8, as amended by article seventeen of the amendments provides: 'In all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel; to be informed of the nature and cause of the accusation; to be confronted by the witnesses against him; to have compulsory process to obtain witnesses in his behalf; to be released on bail upon sufficient security, except in capital offenses, where the proof is evident or the presumption great; and in all

quotation marks omitted.) Id. Additionally, "[t]he determination as to whether a plea has been knowingly and voluntarily entered entails an examination of all of the relevant circumstances [and] the plea may satisfy constitutional requirements even in the absence of literal compliance with the prophylactic safeguards of [Practice Book §§ 39-19 and 39-20]." (Internal quotation marks omitted.) *State* v. *Silva*, 65 Conn. App. 234, 241–42, 783 A.2d 7, cert. denied, 258 Conn. 929, 783 A.2d 1031 (2001).

Finally, "[w]e note that with respect to *Golding* review, we construe the question of whether the defendant knowingly and voluntarily entered her plea based on her understanding of the binding nature of that plea as similar to questions of voluntariness of the plea raised in the context of a defendant's knowledge of the sentencing possibilities. . . . Therefore, to satisfy the third prong of *Golding* in the present case, we must determine whether the defendant was aware of actual sentencing possibilities, and, if not, whether accurate information would have made any difference in his decision to enter a [guilty] plea." (Citation omitted; internal quotation marks omitted.) *State* v. *Gordon*, 69 Conn. App. 691, 695–96, 796 A.2d 1238 (2002).

With those principles in mind, we now address the defendant's claim. The defendant contends that the record reveals that neither the court nor his counsel explained the essential elements of the housing code or fire code violations with which he was charged. "The

prosecutions by information, to a speedy, public trial by an impartial jury. No person shall be compelled to give evidence against him, nor be deprived of life, liberty or property without due process of law, nor shall excessive bail be required nor excessive fines imposed. No person shall be held to answer for any crime, punishable by death or life imprisonment, unless upon probable cause shown at a hearing in accordance with procedures prescribed by law, except in the armed forces, or in the militia when in actual service in time of war or public danger.' " *State* v. *Benitez*, supra, 67 Conn. App. 42–43 n.6.

fact that an allegation of noncompliance with [a rule of practice] may sometimes have constitutional dimensions does not . . . establish the existence of such a constitutional nexus in every case." (Internal quotation marks omitted.) *State* v. *Wideman*, 38 Conn. App. 581, 585, 663 A.2d 409, cert. denied, 235 Conn. 907, 665 A.2d 906 (1995). "The United States Supreme Court has stated that where a trial court does not inform a defendant during a plea proceeding about the elements of the crime charged, even without such an express representation, it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit. *State* v. *Williams*, [60 Conn. App. 575, 581–82, 760 A.2d 948, cert. denied, 255 Conn. 922, 763 A.2d 1043 (2000)], quoting *Henderson* v. *Morgan*, 426 U.S. 637, 647, 96 S. Ct. 2253, 49 L. Ed. 2d 108 (1976)." (Internal quotation marks omitted.) *State* v. *Lugo*, 61 Conn. App. 855, 864, 767 A.2d 1250, cert. denied, 255 Conn. 955, 772 A.2d 153 (2001). Although the record does not support the presumption that defense counsel informed the defendant of the elements of the crimes charged,[11] our review of the record reveals that the defendant was served with notice of the code violations and that the prosecutor recited the underlying facts that tracked those violations.[12] See *State* v. *Wideman*, supra, 587.

---

[11] Our review of the transcript of the plea agreement does not reveal that the court asked the defendant if he had an opportunity to discuss the plea with his attorney.

[12] The relevant portion of the state's recitation of facts surrounding the fire code and housing code violations, in relevant part, is as follows:

"The Court: Okay. Give me the facts . . . please.

"[Prosecutor]: Reckless endangerment, Your Honor, September 25, 2000, [a detective from the Waterbury police department's] detective bureau was with inspector Shawn McKay of the fire bureau prevention for the fire department where they saw an extension cord running across a couple of properties, exposed area, where a three year old boy was walking by. Live wires. It could have caused electrocution of any person coming in contact with the live wires.

"The Court: Tell me about the fire safety code.

Further, an examination of the transcript of the defendant's plea canvass indicates that the court did fully inform the defendant that by pleading guilty, he was waiving his privilege against self-incrimination, his constitutional right to a jury trial and his right to confront his accusers.[13] Additionally, the record indicates that the defendant entered his guilty pleas of his own volition, without any force or threats by any other persons, and that he was certain that he wanted to plead guilty to the charges against him. Given the court's inquiries and the defendant's responses, the record demonstrates

"[Prosecutor]: Yes, Your Honor. Fire safety code was enforced against [the defendant's] property, Hillside Avenue. Fire inspectors did an inspection of the property, found several violations of the fire safety code, including six alleged on the substitute information. The violations were subject of an order to abate, which [the defendant] received three times and failed to comply with.

"The Court: What were they, do you know?

"[Prosecutor]: They were, wall did not have one hour resistance rating, stairs did not have a one hour resistance rating, the exit way of the walls had to have a one hour heat egress, headroom was not a minimum of six feet, eight inches, which [it] is required to be, handrails were not in place and illumination was noncompliant in the exit ways.

"The Court: How do you violate sewage overflow?

"[Prosecutor]: He had active sewage overflow running from his property at 17 Easton Avenue out into the public roadway, which he failed to abate after receiving an order from the health department.

"The Court: Health code violations.

"[Prosecutor]: Those are relating to an apartment at . . . 20 Dikeman Street in Waterbury. Several violations found by the health inspector, toilet— did not fix the hot water tap which was continually leaking hot water, light fixture in the kitchen was broken, mice and roach infestation throughout the apartment, and there was [a] heating problem. The heating system had been red tagged, was not operable. He failed to fix it after receiving an order to correct all of those."

[13] The following colloquy occurred between the court and the defendant during the plea canvass:

"The Court: "By pleading guilty, you're giving up certain rights, your right to plead not guilty, have a trial before a judge or jury, have an attorney assist you at trial, present defenses, confront accusers, cross-examine witnesses and you are giving up your right against self-incrimination; do you understand that?

"[Defendant]: Yes, I understand."

that even if the court expressly had stated the elements of the crimes, the defendant's decision would not have been different. We conclude, therefore, that the court adequately informed the defendant of the terms of the plea agreement, and the court's failure to inform him explicitly of all the elements of the charges did not render his guilty plea to the violations unknowing or involuntary.

## II

The defendant next claims that the court improperly found that he had breached his plea agreement. We disagree.

Our Supreme Court has held that a plea agreement is akin to a contract and that the well established principles of contract law can provide guidance in the interpretation of a plea agreement. See *State* v. *Garvin*, 242 Conn. 296, 314, 699 A.2d 921 (1997); *State* v. *Trotman*, 68 Conn. App. 437, 444, 791 A.2d 700 (2002). Where the contract language relied on by the trial court is definitive, the interpretation of the contract is a matter of law and our review is plenary. *Empire Paving, Inc.* v. *Milford*, 57 Conn. App. 261, 265, 747 A.2d 1063 (2000).

The defendant asserts that he entered his guilty plea pursuant to his belief that he only had to substantially correct the housing violations cited by the fire department and health department, and because he had repaired all but four of the twenty-five violations, he did not breach the agreement. By substantially performing the obligations of the plea agreement, the defendant maintains that, in good faith, he made sufficient efforts to comply with its terms.[14]

---

[14] Even if we assume, arguendo, that the contract called for substantial rather than full performance, the defendant's failure to make the repairs by July 2 and August 14, 2001, did not demonstrate a good faith effort to comply with the plea agreement.

We begin by pointing out that the primary goal of contract interpretation is "to effectuate the intent of the parties . . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms." (Internal quotation marks omitted.) *Cadle Co.* v. *Ginsberg*, 70 Conn. App. 748, 761, 802 A.2d 137, cert. denied, 262 Conn. 905, 810 A.2d 271 (2002). A review of the plea agreement reveals that its plain words, as recited by the court during the plea colloquy, specified that "any outstanding violations" cited at the Dikeman Street[15] and Easton Avenue apartment buildings had to be "finished," and that "if [the defendant] did *everything*, everything gets thrown out." (Emphasis added.) In light of the clear and unambiguous terms of the plea agreement, we conclude, on the basis of our plenary review of that agreement, that the defendant's failure to cooperate fully, truthfully and completely was a breach of that agreement, as determined by the trial court.

### III

The defendant's final claim is that he was deprived of his constitutional right to effective assistance of counsel. Specifically, he claims that his counsel failed to make reasonable efforts to confirm and to ensure that he completely understood and appreciated the plea bargain offer. We disagree.

Initially, we note that the defendant failed to raise his claim before the trial court. "Our Supreme Court has consistently concluded that the preferred vehicle for an ineffective assistance of counsel claim is either a petition for a writ of habeas corpus or a petition for a new trial, not a direct appeal. . . . Absent the eviden-

---

[15] During the defendant's plea agreement proceeding, the court acknowledged that the Dikeman Street property was in foreclosure, but it noted that the defendant still was responsible for making the necessary repairs until a third party had obtained title to the property.

tiary hearing available in the collateral action, review in this court of the ineffective assistance claim is at best difficult and sometimes impossible. The evidentiary hearing provides the trial court with the evidence that is often necessary to evaluate the competency of the defense and the harmfulness of any incompetency." (Citations omitted; internal quotation marks omitted.) *State* v. *Owens*, 63 Conn. App. 245, 262, 775 A.2d 325, cert. denied, 256 Conn. 933, 776 A.2d 1151 (2001). Practice Book § 39-27 (4)[16] provides, however, an exception to that general rule when ineffective assistance of counsel results in a guilty plea. See *State* v. *Gray*, 63 Conn. App. 151, 161, 772 A.2d 747, cert. denied, 256 Conn. 934, 776 A.2d 1151 (2001); see also *State* v. *Irala*, 68 Conn. App. 499, 525, 792 A.2d 109, cert. denied, 260 Conn. 923, 797 A.2d 519, cert. denied, 537 U.S. 887, 123 S. Ct. 132, 154 L. Ed. 2d 148 (2002). "On the rare occasions that we have addressed an ineffective assistance of counsel claim on direct appeal, we have limited our review to allegations that the defendant's sixth amendment rights had been jeopardized by the actions of the *trial court*, rather than by those of his counsel." (Emphasis in original; internal quotation marks omitted.) *State* v. *Parrott*, 262 Conn. 276, 285, 811 A.2d 705 (2003). That rare occasion did not arise here. There was no claim in the trial court of any problem between the defendant and counsel, and no allegation that the court should have inquired as to a claim that there had been ineffective assistance. No record was made, and there is no record in this proceeding from which this court could make a determination using the *Strickland-Hill* test.[17] See

---

[16] Practice Book § 39-27 (4) provides that a defendant may withdraw a guilty plea if the plea results from the denial of the effective assistance of counsel.

[17] "The *Strickland-Hill* standard *is* the appellate standard of review for ineffective counsel claims raised on a direct appeal" after a guilty plea. (Emphasis in original.) *Baillargeon* v. *Commissioner of Correction*, 67 Conn. App. 716, 732, 789 A.2d 1046 (2002). "In *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the United States Supreme Court adopted a two part standard for evaluating claims of ineffective assis-

*Baillargeon* v. *Commissioner of Correction*, 67 Conn. App. 716, 732, 789 A.2d 1046 (2002). Not only was there no claim in the trial court that the defendant was not advised of the elements of the charges, there is no indication that he would have acted differently had that occurred. The test simply is not satisfied here. See *State* v. *Nelson*, 67 Conn. App. 168, 177, 786 A.2d 1171 (2001).

There is no factual record from which this court could determine that there was ineffective assistance or that any prejudice flowed from that representation. We conclude, therefore, that any such claim in this case cannot be made on direct appeal.

The judgments are affirmed.

In this opinion the other judges concurred.

tance of counsel pursuant to which a defendant must show (1) that counsel's representation fell below an objective standard of reasonableness and (2) that counsel's deficient performance prejudiced the defense." *State* v. *Turner*, 67 Conn. App. 708, 712, 789 A.2d 1058, cert. granted on other grounds, 260 Conn. 905, 795 A.2d 546 (2002). "For ineffectiveness claims resulting from guilty pleas, we apply the standard set forth in *Hill* v. *Lockhart*, 474 U.S. 52, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985), which modified *Strickland*'s prejudice prong." *Baillargeon* v. *Commissioner of Correction*, supra, 721. "To satisfy the prejudice prong, the petitioner must show a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill* v. *Lockhart*, [supra, 59] . . . ." (Citation omitted; internal quotation marks omitted.) *Baillargeon* v. *Commissioner of Correction*, supra, 722.