STATE OF CONNECTICUT *v.* LORI TROTMAN
(AC 21242)

Lavery, C. J., and Foti and Dupont, Js.

438

Argued November 26, 2001—officially released February 26, 2002

*Joaquina Borges King,* for the appellant (defendant).

*Rita M. Shair,* senior assistant state's attorney, with whom were *Corinne Klatt,* supervisory assistant state's attorney, and, on the brief, *John A. Connelly,* state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The defendant, Lori Trotman, appeals from the judgment of the trial court revoking her probation pursuant to General Statutes § 53a-32 and committing her to the custody of the commissioner of correction for a period of four years. On appeal, the defendant claims that the trial court improperly (1) concluded, on the basis of the evidence, that her urine sample tested positive for the presence of an opiate, (2) found that she violated the terms of the plea agreement[1] and (3) revoked her probation. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to the resolution of this appeal. On December 9, 1997, the court sentenced the defendant to an eighteen month suspended sentence and two years of probation following a conviction for possession of narcotics. On September 8, 1999, during the two year probationary period, the defendant was charged with possession of narcotics with intent to sell in violation of General Statutes § 21a-277 (a) and violation of probation in violation of § 53a-32.

On February 1, 2000, the defendant entered a plea of guilty under the *Alford* doctrine[2] to the possession of narcotics charge. The defendant also admitted to violating her probation imposed by the December 9, 1997 sentence. The state, as part of the plea agreement,

---

[1] Dependent on this claim is the defendant's claim that the court improperly denied her "motion for immediate drug testing and objection to revocation of plea agreement." Because we conclude that the court's findings were not clearly erroneous, we need not address its denial of the defendant's motion.

[2] Under the *Alford* doctrine "[a]n individual accused of crime can voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime . . . ." (Internal quotation marks omitted.) *Ghant* v. *Commissioner of Correction*, 255 Conn. 1, 3 n.2, 761 A.2d 740 (2000), quoting *North Carolina* v. *Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

nolled a number of additional charges filed against the defendant and allowed the matter to be continued for four months to allow the defendant to enroll in a drug treatment program.

While she was in the program, the defendant was required to submit to random urine samples for drug testing. Monthly reports were to be submitted to the court through the program. If the defendant successfully completed the program, she would have received a suspended sentence of four years with three years of probation. The defendant's failure to remain in the program, a new arrest or a urine test indicating drug use would result in a sentence of four years without the right to argue for a lesser sentence.

Three months into her rehabilitation, the defendant's urine sample tested positive for an opiate. The defendant was brought before the court for a hearing in which the court found that the defendant had in fact violated her plea agreement and reinstated, according to that agreement, her four year prison sentence. At that hearing, the court denied the defendant's previously filed motion objecting to the court's "revocation of the plea agreement." This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the court improperly found that, on the basis of the evidence, her urine sample tested positive for the presence of an opiate. The defendant claims that the court's finding was improper because there was evidence that the "drug test may have yielded a false positive . . . ." Specifically, the defendant claims that the record does not contain sufficient evidence to support a finding that the urine sample tested positive for the presence of an opiate. We disagree.

Because the defendant's claim challenges the sufficiency of the evidence, which is based on the court's factual findings, the proper standard of review is whether, on the basis of the evidence, the court's finding of a positive drug test was clearly erroneous. See *Aubin* v. *Miller*, 64 Conn. App. 781, 796, 781 A.2d 396 (2001). In other words, a court's finding of fact is clearly erroneous and its conclusions drawn from that finding lack sufficiency "when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Azia* v. *DiLascia*, 64 Conn. App. 540, 558, 780 A.2d 992, cert. denied, 258 Conn. 914, 782 A.2d 1241 (2001). Moreover, we repeatedly have held that "[i]n a [proceeding] tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . Where there is conflicting evidence . . . we do not retry the facts or pass on the credibility of the witnesses. . . . The probative force of conflicting evidence is for the trier to determine." (Internal quotation marks omitted.) *State* v. *Nelson*, 67 Conn. App. 168, 179, 786 A.2d 1171 (2001).

In this case, the state presented evidence of the results of the testing performed on the random urine sample taken from the defendant. Those results tested positive for the presence of an opiate. The defendant was brought before the court where she denied using any drugs during the rehabilitation period. In support of her defense, the defendant presented the court with a letter from her program counselor claiming that, because the defendant had no prior record of using opiates, she personally felt that the drug test was "questionable." The defendant also argued that "poppy

seeds" caused the positive test result or that there was a mix-up in the samples.

As the sole arbiter of the testimony, the court did not believe the defendant's assertions that she had not used drugs during the rehabilitation period. Further, the court was not persuaded that the viability, reliability or accuracy of the test results should be called into question. We conclude, therefore, that the court's finding that the urine sample tested positive for the presence of an opiate was not clearly erroneous in light of the evidence and the pleadings in the record as a whole. Additionally, we cannot say that we are "left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Azia* v. *DiLascia*, supra, 64 Conn. App. 558. The court's conclusion had sufficient evidentiary support because it was drawn from a finding of fact that cannot, after a review of the record, be found to be clearly erroneous.

II

The defendant next claims that the court improperly found that she violated the terms of the plea agreement. The defendant argues that she remains compliant with the plea agreement because it requires only that she successfully complete the drug rehabilitation program and that she have no new arrests. We are not persuaded.

Before we address whether the court was correct in finding that the defendant breached her plea agreement, we first look to the terms of that agreement. We identify those terms by way of the court's explanation of the plea agreement to the defendant.

Before accepting the defendant's plea, the court canvassed the defendant and explained all of the terms in the plea agreement in accordance with Practice Book § 39-19. The court, in addressing the defendant, stated: "Now, I'm going to go over this agreement with you

again, so I want to make sure you understand. The agreement . . . is as follows: The case is going to be continued for sentencing for four months. You're going to be brought in every month from now until four months, so monthly over the next four months. You are to be in a treatment program, and you are to have remained in that treatment program and you are to be successful in it or compliant with it. *That means clean urines,* cooperating with the program, doing well. And at the end of the four month period, it comes back for the report that you're in the treatment program or successfully completed it and doing well, no problems. The court will give you a sentence—a total effective sentence of four years suspended, three years probation, and probably with some special conditions of continued treatment of some sort.

"On the other hand, if you come back with reports that either you have left the program or that you were not compliant or cooperating with the program, *or that you have dirty urines* or that you have a new arrest and a finding of probable cause has been made, the court will sentence you to four years to serve. And your attorney does not retain the right to argue for anything less than that." (Emphasis added.) The court asked the defendant if she understood what the court had explained, and she responded affirmatively.

The trial court repeated: "I want you to understand . . . [that the] agreement is basically this, that you comply with this program and don't get any new arrests. It's as simple as that. If you comply with the program, you're going to get a suspended sentence. If you don't comply and you get arrested and there's probable cause found *or there's dirty urines* or you're not cooperating or you're not even complying with the program, you're getting four years to serve. I don't care what the presentence investigation says. [The agreement] says four years to serve. I want to make sure you understand

that. Do you understand that?" (Emphasis added.) The defendant acknowledged several times that she fully understood the terms of the plea agreement and the risks involved. The court, thereafter, accepted the plea agreement.

Having identified the terms of the plea agreement, we note at the outset our standard of review and the legal principles applicable to the defendant's claim. The defendant does not claim that an interpretation or construction of the agreement is necessary or that she did not understand the plea agreement or claim that she did not freely and knowingly enter into it. She essentially challenges the court's factual finding that she violated one of the essential terms thereof. As such, we review the court's finding under the clearly erroneous standard.

In *State* v. *Garvin*, 242 Conn. 296, 314, 699 A.2d 921 (1997), our Supreme Court held that plea agreements involve principles of contract law. In *Garvin*, the trial court found that the defendant breached his plea agreement by failing to appear in court on a particular date. As a result, the court was no longer bound by the stipulated sentence in that agreement and imposed a greater sentence. Our Supreme Court held that "[u]nder the terms of the defendant's plea agreement, in return for his guilty pleas, he received consideration in the form of the agreed upon sentence. One of the conditions of the agreement, however, was that the defendant appear for sentencing. Fulfillment of this condition was within the defendant's control. He understood at the outset that, if he failed to satisfy this condition, he nonetheless would be bound to the agreement. By holding the defendant to his guilty pleas, while imposing sentences reflecting his failure to appear, the trial court did no more than enforce the terms of the plea agreement." Id.

Guided by the decision in *Garvin*, we now determine whether the court properly found that the defendant

breached the plea agreement. Similar to the defendant in *Garvin*, the defendant in this case, in return for her plea, received consideration in the form of a suspended four year prison sentence plus three years of probation, conditioned on the successful completion of four months of rehabilitation without any new arrests or positive drug tests. A specific condition of the plea agreement was that the defendant could not produce any urine samples that tested positive for the presence of drugs within the four month rehabilitation period. This was the defendant's obligation under the plea agreement. She was fully aware of it and understood at the outset that, if she failed to satisfy that condition, she would be bound by the plea agreement and the court would impose a four year prison sentence.

In light of the evidence and pleadings in the record as a whole, namely, the unambiguous terms of the plea agreement and the positive results of the urine sample, the record contains evidence to support the court's finding that the defendant violated the terms of the plea agreement. We conclude that the court properly found that the defendant breached the plea agreement and, as a result, did no more than enforce the terms of that agreement when it reinstated the defendant's four year sentence.[3]

### III

The defendant next claims that the court improperly revoked her probationary status imposed at her December 9, 1997 sentence. The defendant argues that the court should not have revoked her probation, under

---

[3] The defendant also contends that the court improperly terminated the plea agreement. This claim has no merit because according to the clear terms of the plea agreement, the consequences of a positive urine test amount to a violation of that agreement and reinstatement of the four year prison sentence, thereby terminating the agreement.

§ 53a-32, based merely on "a single dirty urine."[4] Essentially, the defendant asks this court not to impose the four year sentence so that she may continue her probation and four month rehabilitation period under the plea agreement. We decline to do so.

"The standard of review of an order revoking probation is whether the trial court abused its discretion; if it appears that the trial court was reasonably satisfied that the terms of probation had been violated, and, impliedly, that the beneficial purposes of probation were no longer being served, then the order must stand. . . . In making this determination, the trial court is vested with broad discretion. . . . [A] defendant who seeks to reverse [the] exercise of judicial discretion assumes [a] heavy burden . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Smith*, 255 Conn. 830, 844, 769 A.2d 698 (2001). Moreover, "[i]n determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling; reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." *State* v. *Cyr*, 57 Conn. App. 743, 751, 751 A.2d 420, cert. denied, 254 Conn. 905, 755 A.2d 883 (2000).

---

[4] This argument is completely misplaced. The defendant apparently argues, in her appellate brief, that the court should not have revoked the probationary status imposed on her at the December 9, 1997 sentencing hearing. She, however, confuses her analysis in this regard with her earlier arguments that the court improperly found that the urine sample tested positive for the presence of an opiate and that she was not compliant with the plea agreement. She thus mixes the evidentiary phase of the probation revocation hearing with the discretionary, dispositional phase. Although the defendant's brief in support of this claim is weak, we nevertheless reach the merits of her claim because the brief contains some legal authority and analysis. Compare *Commission on Human Rights & Opportunities* v. *Truelove & Maclean, Inc.*, 238 Conn. 337, 344 n.11, 680 A.2d 1261 (1996) (" '[w]here an issue is merely mentioned, but not briefed beyond a bare assertion of the claim, it is deemed to have been waived' ").

Section 53a-32 (b) imposes certain limitations on a trial court's ability to revoke a defendant's probation. After a defendant has been shown to have violated her probation,[5] the "court may . . . revoke the sentence of probation . . . . If such sentence is revoked, the court shall require the defendant to serve the sentence imposed or impose any lesser sentence. . . . No such revocation shall be ordered, except upon consideration of the whole record and unless such violation is established by the introduction of reliable and probative evidence and by a preponderance of the evidence." General Statutes § 53a-32 (b).

In this case, the defendant was arrested and pleaded guilty to the charges against her during her probationary period. She also admitted to violating that probation. The defendant entered into a plea agreement whereby her probation was continued for four months contingent on her successful completion of four months of rehabilitation. She did not successfully complete the four months of rehabilitation and, as a result, violated the plea agreement that continued her probation. By violating the plea agreement, the defendant effectively violated her December 9, 1997 sentence of probation.

Because the defendant's admission that she violated her probation and the fact that she violated her plea agreement, which served to continue her probation, left open no question as to whether she violated that probation, the court was free to revoke it. The court was reasonably satisfied that the terms of the defendant's probation had been violated and, impliedly, determined that the beneficial purposes of probation were no longer being served. The record supports the court's conclusion. Thereafter, § 53a-32 (b) allowed the court to impose a sentence. Although the court could have imposed a lesser sentence, it chose not to and, instead,

---

[5] See General Statutes § 53a-32 (a).

enforced the terms of the plea agreement by sentencing the defendant to the four year prison sentence to which she explicitly agreed.

The judgment is affirmed.

In this opinion the other judges concurred.