# STATE OF CONNECTICUT *v.* JUAN ROSADO
## (AC 25162)

Flynn, Bishop and McDonald, Js.

Argued September 22, 2005—officially released January 3, 2006

*Mary Boehlert,* special public defender, for the appellant (defendant).

*Joseph T. Corradino,* senior assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict,* state's attorney, and *C. Robert Satti, Jr.,* senior assistant state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. The defendant, Juan Rosado, appeals from the judgment of the trial court revoking his probation and sentencing him to serve five years of a previously suspended sentence on an underlying conviction for risk of injury to a child. The dispositive issue on appeal is whether the court clearly articulated the circumstances under which the defendant's behavior would breach his plea agreement.[1] We reverse the judgment of the trial court and remand the case for further proceedings in accordance with this opinion.

The following facts and procedural history are relevant to our resolution of the defendant's appeal. On April 2, 2002, the defendant pleaded guilty and was convicted of the crime of risk of injury to a child in violation of General Statutes § 53-21. He was sentenced to five years in the custody of the commissioner of correction, execution suspended, and placed on probation for five years. Subsequently, the defendant was charged with violation of probation.[2] On June 26, 2003,

[1] On appeal, the defendant claims that (1) the court improperly found that he violated the plea agreement, (2) he did not have fair notice that missing classes, without either leaving or having his participation at the Bridgeport alternative incarceration center terminated, would violate the plea agreement and (3) the court abused its discretion in revoking his probation. Although the defendant asserts those three issues on appeal, one basic proposition is dispositive of and fatal to the position taken by the state— whether the terms of the plea agreement were clear and unambiguous.

[2] An arrest warrant was issued for the defendant for failure to abide by the terms of his probation in that he failed to report to his probation officer, to submit to medical or psychological examination, to submit urinalysis, to attend alcohol or drug testing, to attend counseling sessions and to provide financial support for his child.

the defendant admitted a violation of the terms of his probation and made a plea agreement pursuant to *State v. Garvin*, 242 Conn. 296, 699 A.2d 921 (1997),[3] which called for a continuance of the case for a period of four months for disposition. The specific terms of the plea agreement were set forth by the court as follows:

"The Court: Okay. You were placed on probation, by me, back on November 8, 2002. Am I right?

"[The Defendant]: Yes.

"The Court: Okay. Now, we're going to end up watching you for four months. You've got to remain at [the alternative incarceration center (center)]. You've got to keep the drug treatment, give urine samples. If you have a dirty urine, you're going to get your five years; do you understand that?

"[The Defendant]: Yes.

"The Court: If [the center] refers you to another program, you'll go to that program, and we'll watch you there. You've got to comply with all rules and regulations. You cannot pick up any new arrests. You can have no dirty urines; do you understand that?

"[The Defendant]: Yes.

"The Court: If, after four months, it works out like that, then I'll continue you on probation. If, in fact, you end up with a dirty urine or you get a new arrest or you leave the program, you're going to get the five years; is that clear?

"[The Defendant]: Yes."

---

[3] "A *Garvin* agreement is a conditional plea agreement that has two possible binding outcomes, one that results from the defendant's compliance with the conditions of the plea agreement and one that is triggered by the defendant's violation of a condition of the agreement." *State v. Stevens*, 85 Conn. App. 473, 474 n.2, 857 A.2d 972, cert. granted on other grounds, 272 Conn. 902, 863 A.2d 695 (2004).

The center reported no "major problems" with the defendant from June to August, 2003, but between August and October, 2003, the center reported that the defendant had twelve unexcused absences.[4] On October 7, 2003, after giving the defendant a formal warning, an informal reprimand and deciding to place him on "zero tolerance" status, the center filed a negative report with the court. As a result of the negative report, the defendant appeared in court on October 21, 2003, for a hearing, pursuant to State v. Small, 78 Conn. App. 14, 826 A.2d 211 (2003), to determine whether he had complied with the terms of his Garvin agreement and for disposition following his June 26, 2003 admission of violation of probation. After conducting a sentencing hearing, the court found that the defendant had twelve unexcused absences from the center. Finding that the unexcused absences violated the rules and regulations of the center, the court held that the defendant had violated a condition of his plea agreement and imposed a sentence of five years incarceration. This appeal followed.

On appeal, the defendant claims that he lacked adequate notice that his failure to attend twelve classes at the center would constitute a breach of the plea agreement, subjecting him to the five year sentence.

We begin with a brief overview of pertinent law governing plea agreements. The United States Court of Appeals for the Second Circuit has held that "[b]ecause a defendant pleading guilty pursuant to a plea agreement waives a number of fundamental constitutional rights, see Boykin v. Alabama, 395 U.S. 238, 243, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969), the circumstances surrounding the plea agreement must comport with due process to ensure [the] defendant's understanding of

---

[4] The record reflects that of the eighty reporting days commencing in June until October, 2003, the defendant had sixteen absences, four of which were excused.

its consequences. . . . The notion of fundamental fairness embodied in due process implies that whatever promises the government makes in the course of a plea agreement to induce a guilty plea must be fulfilled." (Citations omitted.) *Spence* v. *Superintendent, Great Meadow Correctional Facility*, 219 F.3d 162, 167 (2d Cir. 2000). Thus, "[i]t is axiomatic that the trial court judge bears an affirmative, nondelegable duty to clarify the terms of a plea agreement." (Internal quotation marks omitted.) *State* v. *Lopez*, 77 Conn. App. 67, 73, 822 A.2d 948 (2003), aff'd, 269 Conn. 799, 850 A.2d 143 (2004).

The dispositive issue in this case is whether the terms of the plea agreement were clear and unambiguous so as to put the defendant on notice that failing to attend classes at the center would result in the imposition of the five year sentence of incarceration. The defendant argues that the terms of the plea agreement were not definitive because there was a latent ambiguity in the court's articulation. We agree with the defendant.

"Our Supreme Court has held that a plea agreement is akin to a contract and that the well established principles of contract law can provide guidance in the interpretation of a plea agreement." Id., 77. "Whether a contractual provision is ambiguous presents a question of law and therefore is subject to de novo review." (Internal quotation marks omitted.) *Wolosoff* v. *Wolosoff*, 91 Conn. App. 374, 382, 880 A.2d 977 (2005).

"[T]he primary goal of contract interpretation is to effectuate the intent of the parties . . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms." (Internal quotation marks omitted.) *State* v. *Lopez*, supra, 77 Conn. App. 78. The Second Circuit has stated, however, that "the government ordinarily has certain awesome advantages in bargaining power . . . ."

(Internal quotation marks omitted.) *United States* v. *Palladino*, 347 F.3d 29, 33 (2d Cir. 2003). "Because of . . . the substantial constitutional interests implicated by plea agreements, the state must bear the burden for any lack of clarity in the agreement and ambiguities should be resolved in favor of the defendant." *Innes* v. *Dalsheim*, 864 F.2d 974, 979 (2d Cir. 1988), cert. denied, 493 U.S. 809, 110 S. Ct. 50, 107 L. Ed. 2d 19 (1989).

As "[t]he validity of plea bargains depends on contract principles . . . we look to those principles in order to dispose of the disputed condition properly. A court may, where possible, sever the illegal portion of the agreement and enforce the remainder." (Citation omitted; internal quotation marks omitted.) *State* v. *Stevens*, 85 Conn. App. 473, 479, 857 A.2d 972, cert. granted on other grounds, 272 Conn. 902, 863 A.2d 695 (2004).

In the present case, the plea agreement was articulated orally by the court during the June 26, 2003 hearing. An examination of the transcript reveals that although the court clearly communicated the consequences of a breach of the plea agreement, the specific behavior that would constitute a breach, subjecting the defendant to incarceration, was not clear.

The ambiguity in the court's explanation lies in the court's failure to state specifically that violating the rules and regulations of the center would constitute a breach of the plea agreement subjecting the defendant to incarceration. As it related to the rules and regulations, the court merely stated that "[i]f [the center] refers you to another program, you'll go to that program, and we'll watch you there. You've got to comply with all rules and regulations." The court clearly stated, however, that "[i]f, in fact, you end up with a dirty urine or you get a new arrest or you leave the program, you're going to get the five years . . . ." If the court sought to convey to the defendant that violating any of the

rules and regulations of the center would also constitute a breach of the plea agreement, the court could have clearly communicated that to him.

A statement may be said to be ambiguous if its meaning reasonably is susceptible to more than one interpretation. *Montoya* v. *Montoya*, 91 Conn. App. 407, 417, 881 A.2d 319, cert. granted on other grounds, 276 Conn. 916, 888 A.2d 85 (2005). In this instance, one reasonably may interpret the statement regarding the rules and regulations as explaining to the defendant what he must do in order to remain enrolled in the program and that his failure to remain in the program would subject him to incarceration. While the court established a clear nexus between submitting a dirty urine, being rearrested or leaving the center and the imposition of the five year prison sentence, the court established no such connection between violating the rules and regulations of the center and receiving the five year sentence.

The record does not support the state's argument that the court clearly explained the terms of the plea agreement to the defendant and that compliance with the rules of the center was made a specific condition of the plea agreement, the violation of which would result in incarceration. In support of its argument, the state notes that the court, on June 5, 2003, required that the defendant attend the center three times a week if he was working or five times a week if he was unemployed. The state contends that "requirements are synonymous with rules and regulations for the purpose of notice to the defendant." That the defendant was informed prior to the plea agreement that he must attend the classes at the center does not answer the question of whether the court clearly articulated to him at the time of his plea that his failure to attend the classes would constitute a breach of the plea

agreement, resulting in the imposition of the five year prison sentence.[5]

The state argues, nevertheless, that the court sufficiently articulated the terms of the plea agreement. To support its contention, the state cites *State* v. *Stewart*, 77 Conn. App. 238, 243, 822 A.2d 366 (2003), for the proposition that "[t]here is no requirement . . . that the defendant be advised of every possible consequence of such a plea." (Internal quotation marks omitted.) Id. The state's reliance on *Stewart* is misplaced. In *Stewart*, the defendant alleged that his guilty plea was not entered knowingly and voluntarily. Id., 240. That is not the defendant's claim in this case. Here, the defendant does not claim that his guilty plea was not knowing and voluntary. Rather, he disputes the court's finding that he violated the terms of the plea agreement.

As we have stated, our precedent establishes that "the trial court judge bears an affirmative, nondelegable duty to clarify the terms of a plea agreement." (Internal quotation marks omitted.) *State* v. *Lopez*, supra, 77 Conn. App. 73. In *Lopez*, we concluded that the trial court properly held that the defendant had breached his plea agreement because the plain and unambiguous terms of the plea agreement prohibited the defendant's conduct. Id., 78. In *Lopez*, a housing code violation case, the defendant alleged that he "only had to substantially correct the housing violations cited by the fire department and health department, and because he had repaired all but four of the twenty-five violations, he did not breach the agreement." Id., 77. The record, however, belied that claim. "A review of the plea agreement reveal[ed] that its plain words, as recited by the court

---

[5] Indeed, the state concedes that the very rules and regulations the defendant is alleged to have violated never were introduced into evidence either at the June 26 or October 21, 2003 hearings. Thus, there is insufficient support in the record for the finding that failure to attend classes at the center violated the rules and regulations, much less the plea agreement.

during the plea colloquy, specified that 'any outstanding violations' . . . had to be 'finished,' and that 'if [the defendant] did *everything,* everything gets thrown out.' " (Emphasis in original.) Id., 78.

Similarly, in *State* v. *Trotman,* 68 Conn. App. 437, 443–45, 791 A.2d 700 (2002), the defendant alleged that the court improperly found that she violated the terms of her plea agreement after her urine tested positive for the presence of opiate. The defendant alleged that the plea agreement required only that she complete a drug rehabilitation program and have no new arrests. Id., 442. We affirmed the trial court's ruling, concluding that the court unambiguously communicated to the defendant that a positive urine sample would constitute a violation of the plea agreement. We noted that the court in *Trotman* communicated to the defendant the following: "[I]f you come back with reports that either you have left the program or that you were not compliant or cooperating with the program, or that you have dirty urines or that you have a new arrest and a finding of probable cause has been made, the court will sentence you to four years to serve. . . . It's as simple as that. . . . If you don't comply and you get arrested and there's probable cause found or there's dirty urines or you're not cooperating or you're not even complying with the program, you're getting four years to serve. I don't care what the presentence investigation says. [The agreement] says four years to serve. I want to make sure you understand that. Do you understand that?" (Internal quotation marks omitted.) Id., 443–44.

In *State* v. *Small,* supra, 78 Conn. App. 23, the defendant argued that the court failed to articulate the terms of the plea agreement by not clarifying that if he had any contact with any of the victims, he would forfeit his right to withdraw his admission and be sentenced to four years and eleven months in prison. On appeal, we affirmed the decision of the trial court, concluding

that the court unambiguously communicated the terms of the plea to the defendant. During the hearing in *Small*, the following colloquy ensued between the defendant and the court:

"The Court: All right. There's also to be no contact between you and the victims. No contact means no contact, not by phones, beepers or third parties. All right. And what do you wish to say, sir?

"[The Defendant]: Okay. I do disagree with a lot of things that are going on that people are saying that I did or said. Okay. And, I hear you tell me that if I get involved with them again or whatever, you're going to withdraw my plea.

"The Court: No, you get involved with them again [and] you're going to jail for four years [and] eleven months." (Internal quotation marks omitted.) Id., 17–18 n.3.

"[The Defendant]: Four years [and] seven months, whatever—

"The Court: Eleven months.

"[The Defendant]:—eleven months, whatever you suggest. Okay. Well, I feel as though like this, a lot of the stuff that's being said in these things is a lie. So, they can call here and say the same lie, then somebody come get me for—

"The Court: It has to be—I have to find probable cause . . . ." (Internal quotation marks omitted.) Id., 18 n.4.

"The Court: All right. No contact means no contact, not by phones, beepers or third parties. If I find out you're having contact and I feel there's probable cause for the arrest, I can give you up—I will be able to give you up to four years and eleven months in jail. Do you agree to that?

"[The Defendant]: Yes, I did." (Internal quotation marks omitted.) Id., 18 n.5.

In *Lopez*, *Trotman* and *Small*, it was significant in our decisions to affirm the judgments of the trial court that the terms of the agreements in those cases were clearly understood by the defendants and were made manifest by the transcript references set forth in each case. See id., 23; *State* v. *Lopez*, supra, 77 Conn. App. 78; *State* v. *Trotman*, supra, 68 Conn. App. 443–45. Unlike the disputed conditions in *Lopez*, *Trotman* and *Small*, the transcript from the hearing in this case reveals that the terms of the plea agreement were not clearly communicated to the defendant.

Construing the ambiguous condition of the plea agreement, as it must be, in the defendant's favor, we conclude that it was reasonable for the defendant to understand that he would breach the plea agreement only if he submitted a dirty urine, was arrested, left the center or had his participation there terminated by the center. That conclusion is consistent with the court's and the state's rendition of the terms of the plea agreement when the defendant reappeared before the court on October 21, 2003, for a plea violation hearing. At that time, neither the court nor the state recounted that the defendant's failure to abide by the rules and regulations of the center would constitute a breach of the plea agreement. To the contrary, at the outset of the hearing, the court recounted its understanding of the plea agreement, stating: "At the time the admission was entered, [the defendant] was going to the center three times a week if working, five times a week if not working. He was to continue to participate in the center. That would include random urines. On October 7, 2003, there was a negative report from the center regarding noncompliance, and we're here for a hearing on that. I indicated to [the defendant] at the time he entered his admission that if *in fact he picked up a new arrest,*

*got kicked out of the program or picked up a dirty urine, then he would be facing the five years . . . ."* (Emphasis added.)

Furthermore, the prosecutor also summarized the terms of the plea agreement, stating: "I believe the indication in the file was—was continued until the end of this month for the purpose of determining four things. Number one, *that he continued with the program that he was in attendance with before he entered the plea, that he had no dirty urines, no new arrest and that if he left the program, it would be a violation.*" (Emphasis added.)

Thus, it is clear that the defendant would have breached the plea agreement if he had submitted a dirty urine, been arrested, left the center or if his participation there had been terminated.[6] Even if we assume that attendance was part of the rules and regulations of the center, of which there was no evidence, we cannot conclude that the court, in its remarks at the time of the defendant's plea, established clearly that the defendant's failure to abide by the rules and regulations of the center would result in incarceration.

The judgment revoking the defendant's probation is reversed and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.

---

[6] The undisputed evidence at the October 21, 2003 hearing was that the defendant had not submitted a dirty urine, had not received a new arrest and had not been dismissed by the center. Although the defendant missed classes at the center and was warned that continued absences would result in the termination of his participation there, the record reflects the fact that the center had no intention of dismissing the defendant at that time.