******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* MYCALL OBAS
(SC 19290)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald, Espinosa and Robinson, Js.

*Argued October 5, 2015—officially released February 9, 2016*

*Leon F. Dalbec, Jr.*, senior assistant state's attorney, with whom, on the brief, were *Stephen J. Sedensky III*, state's attorney, and *Sean P. McGuinness*, assistant state's attorney, for the appellant (state).

*Neal Cone*, senior assistant public defender, with whom were *Rosemary Chapdelaine*, senior assistant public defender, and, on the brief, *Lauren Weisfeld*, public defender, for the appellee (defendant).

*Opinion*

EVELEIGH, J. The state appeals from the judgment of the Appellate Court affirming the decision of the trial court granting the application of the defendant, Mycall Obas, to be exempted from continued registration as a sex offender pursuant to General Statutes § 54-251 (b).[1] On appeal, the state claims that the Appellate Court improperly concluded that the trial court had the authority to grant the defendant's application for an exemption from registration approximately seven years after he had commenced registration notwithstanding his plea agreement with the state.[2] We conclude that the Appellate Court properly determined that the trial court had the authority to grant the defendant's application for an exemption from registration and, accordingly, affirm the judgment of the Appellate Court.

The opinion of the Appellate Court sets forth the following undisputed facts and procedural history. "The defendant pleaded guilty to one count of sexual assault in the second degree [in violation of General Statutes § 53a-71 (a) (1)] on December 11, 2003. The plea stemmed from a 2002 incident when the defendant was eighteen years old and a high school senior. The victim was a fifteen year old student who attended the same school as the defendant. According to the prosecutor, the victim never complained that her sexual involvement with the defendant was not consensual.

"The defendant cooperated fully with the police investigation and agreed to testify [in a related criminal prosecution]. As part of the plea agreement struck between the defendant and the state, the defendant received a ten year sentence of imprisonment, suspended after the mandatory minimum nine months, followed by ten years of probation. The prosecutor explained to the court: 'The conditions would be: to register as a sex offender, that's a ten year registration . . . . [The] sex offender evaluation and any treatment deemed necessary. No [unsupervised] contact with any individual . . . under [sixteen] and no contact, whatsoever, directly or indirectly with the victim.' There was no agreement between the defendant and the state that the defendant would never seek modification of the conditions of probation.

"Following the prosecutor's recitation of the underlying facts, plea agreement, and recommendation for a split sentence followed by probation with special conditions, the court canvassed the defendant.

" 'The Court: You've heard the agreed upon recommendation, which is ten years, execution suspended after nine months, which is a mandatory minimum, ten years of probation, standard issues—standard conditions of probation, special conditions of sex offender evaluation and treatment, as deemed necessary . . . . Registration under sex offender status for [ten] years,

no contact with the victim and no unsupervised contact with anyone under . . . [sixteen] years of age. Do you understand that to be the agreed upon recommendation?

" 'The Defendant: Yes, Your Honor.'

"The court accepted the defendant's plea and imposed sentence in accordance with the agreed upon disposition. The defendant was ordered, '[i]n addition to the standard conditions of probation,' to register as a sex offender for a period of ten years, to undergo sex offender evaluation and treatment as deemed necessary, to have no unsupervised contact with anyone under [the] age [of] sixteen and to have no contact with the victim.

"Upon his release from custody in November, 2004, the defendant began reporting to the Office of Adult Probation, registering as a sex offender and receiving sex offender treatment. He violated his probation in 2005 by failing to report a change of address following his parents' eviction from their home. For this violation, two additional years were added to his probation. Since the 2005 violation, the defendant has reported timely to his assigned probation officer, has continued to receive sex offender treatment, and has not engaged in any additional criminal activity. He earned a high school diploma, enrolled in community college and has maintained a full-time job.

"In 2011, the defendant filed a motion to modify the conditions of his probation. Specifically, the defendant asked that the term of his probation be reduced and that the order that he register as a sex offender be terminated. As a predicate for the hearing on the defendant's motion, the court ordered him to undergo an additional psychosexual evaluation. The evaluation concluded that the defendant presented a low risk of reoffending and that he 'would not be one whom the community should fear.' . . . Three separate probation status reports authored by the defendant's supervising officer in the sex offender unit lauded his rehabilitation and raised no objection to the defendant's requested modification.

"Following contested hearings on January 31, 2012, and April 20, 2012, the [trial] court . . . exempted the defendant from the continued obligation to register as a sex offender under § 54-251. Pursuant to § 54-251 (b), the court made findings that the defendant was under nineteen years of age at the time of the offense and that registration was not required for public safety. The court also modified the probation condition prohibiting unsupervised contact with anyone under age sixteen to allow such interactions but only to the extent approved by the Office of Adult Probation. In addition, the court allowed the defendant to travel to South Africa as approved by the Office of Adult Probation. The court

denied that part of the defendant's motion in which he sought to reduce his probation from twelve years to ten years." (Footnotes omitted.) *State* v. *Obas*, 147 Conn. App. 465, 468–71, 83 A.3d 674 (2014).

The state appealed from the judgment of the trial court to the Appellate Court.[3] Id., 471. The Appellate Court concluded as follows: (1) "§ 54-251 (b) permits a court to grant a criminal defendant's request to have an exemption from the registration requirements for sex offenders after the obligation to register has commenced where the registration is made a special condition of probation, and the court finds that the defendant's later rehabilitated status justifies modification"; id., 481; and (2) that the plea agreement in the present case did not divest "the trial court of its authority to modify or enlarge the conditions of the defendant's probation." Id., 484. This appeal followed.

On appeal, the state advances two claims in support of its position that the Appellate Court improperly affirmed the trial court's judgment granting the defendant's application for an exemption from continued registration as a sex offender. First, the state asserts that the Appellate Court improperly interpreted § 54-251 (b) as authorizing the trial court to exempt the defendant from the registration requirements of § 54-251 (a) approximately seven years after the defendant was initially required to register. In the alternative, the state asserts that, even if allowed by § 54-251 (b), the defendant in the present case was barred from filing an application for an exemption from registration pursuant to § 54-251 (b) because he had agreed to register as a sex offender for ten years in the plea agreement. We disagree and, accordingly, affirm the judgment of the Appellate Court.

I

The state first claims that the trial court did not have the authority under § 54-251 (b) to grant the defendant's application for an exemption from registration approximately seven years after the defendant had commenced registering as a sex offender. Specifically, the state claims that § 54-251 (b) does not permit a trial court to grant such an exemption once an individual's obligation to register has commenced.

This appeal requires us to construe the requirements of § 54-251 (b). Accordingly, "we are guided by the well established principle that [i]ssues of statutory construction raise questions of law, over which we exercise plenary review. . . . We are also guided by the plain meaning rule for statutory construction." (Citations omitted; internal quotation marks omitted.) *Cales* v. *Office of Victim Services*, 319 Conn. 697, 701,      A.3d (2015); see also General Statutes § 1-2z.

In accordance with § 1-2z, we begin with the relevant statutory text. Section 54-251 (a) sets forth the sex

offender registration requirements. Section 54-251 (b) provides the following exemption from these requirements: "Notwithstanding the provisions of subsection (a) of this section, the court may exempt any person who has been convicted or found not guilty by reason of mental disease or defect of a violation of subdivision (1) of subsection (a) of section 53a-71 from the registration requirements of this section if the court finds that such person was under nineteen years of age at the time of the offense and that registration is not required for public safety." See footnote 1 of this opinion.

The term "exempt" is not defined in § 54-251, nor is it defined in General Statutes § 54-250, which sets forth the definitions of certain key terms in chapter 969 of the General Statutes, also known as Megan's Law. See *State* v. *Waterman*, 264 Conn. 484, 485–86, 825 A.2d 63 (2003). "In the absence of a definition of terms in the statute itself, [w]e may presume . . . that the legislature intended [a word] to have its ordinary meaning in the English language, as gleaned from the context of its use. . . . Under such circumstances, it is appropriate to look to the common understanding of the term as expressed in a dictionary." (Internal quotation marks omitted.) *Efstathiadis* v. *Holder*, 317 Conn. 482, 488, 119 A.3d 522 (2015).

The term "exempt" is defined with substantial similarity in a number of dictionaries. Merriam-Webster's Collegiate Dictionary (11th Ed. 2003) defines "exempt" as, inter alia, "to release or deliver from some liability or requirement to which others are subject . . . ." The Oxford English Dictionary (2d Ed. 1989) defines "exempt," in relevant part, as "[t]o grant to [a person] immunity or freedom *from* a liability to which others are subject . . . [such as the control of] laws, [or obedience to] an authority." (Emphasis in original.) Lastly, the American Heritage Dictionary (5th Ed. 2011) defines "exempt" as "[t]o free from an obligation, duty, or liability to which others are subject . . . ." These definitions of the word "exempt" indicate that the legislature intended for a court to be able to release an individual otherwise mandated to register as a sex offender from the registration requirements set forth in § 54-251 (a).

We further observe that the text of § 54-251 (b) indicates that there is a single threshold requirement that must be satisfied prior to an individual being eligible to file an application for an exemption from registration. Section 54-251 (b) applies if the person "has been convicted or found not guilty by reason of mental disease or defect of a violation of" sexual assault in the second degree under § 53a-71 (a) (1). Only after this factual predicate has been satisfied does § 54-251 (b) confer upon the trial court the discretionary authority to release an individual from the obligation to comply with the registration requirements if, based on the facts and circumstances properly before it, the trial court finds

that the individual was under nineteen years of age at the time of the offense and poses no risk to public safety. See *State* v. *Bletsch*, 281 Conn. 5, 18, 912 A.2d 992 (2007) (noting that "under the 'may exempt' language in § 54-251 [b], even when the two enumerated factors are satisfied in a given case, the court still may decline to grant the registry exemption"). Thus, the right to seek an exemption from registration is triggered by the entry of a judgment of conviction under § 53a-71 (a) (1). As a result, the usage of the terms "release" and "free" in the aforementioned definitions must indicate that a court maintains the authority to grant an exemption from registration once the individual has been convicted and has become bound to comply with the statutory registration requirements.

The broad, permissive language "may exempt" in § 54-251 (b) is neither qualified by, nor limited to, any particular temporal requirement for seeking an exemption from registration. If the legislature had intended to provide a temporal restriction on an individual's ability to file an application for an exemption from registration, we must assume that it would have said so expressly. "It is a well established principle of statutory interpretation that we cannot accomplish a result that is contrary to the intent of the legislature as expressed in the [statute's] plain language. . . . [A] court must construe a statute as written. . . . Courts may not by construction supply omissions. . . . The intent of the legislature, as this court has repeatedly observed, is to be found not in what the legislature meant to say, but in the meaning of what it did say." (Internal quotation marks omitted.) *State* v. *Rodriguez-Roman*, 297 Conn. 66, 80–81, 3 A.3d 783 (2010). Accordingly, "[i]n the absence of any indication of the legislature's intent concerning this issue, we cannot engraft language onto the statute" for "[i]t is not the function of the courts to enhance or supplement a statute containing clearly expressed language." *Laliberte* v. *United Security, Inc.*, 261 Conn. 181, 186, 801 A.2d 783 (2002). The task of promulgating such a limitation lies with the legislature, not with the court. Therefore, it would be improper for this court to supply a temporal restriction that the legislature has not provided for in the statute.

Finally, we note that § 54-251 (a) imposes a continuing obligation upon an individual to report any changes in the information previously filed with the Commissioner of Emergency Services and Public Protection.[4] The fact that an individual is required to take additional steps after the initial registration stage supports our understanding that he or she may seek an exemption from these requirements after initial registration.

On the basis of an examination of the express statutory language, § 54-251 (b) plainly applies to the circumstances in the present case. Consistent with the plain language of the statute, we conclude that the broad

phrase "may exempt" in § 54-251 (b) means that a court may exercise its discretion to grant an exemption from registration once an individual has been convicted of sexual assault in the second degree in violation of § 53a-71 (a) (1), regardless of whether the individual's obligation to register pursuant to § 54-251 (a) has commenced, so long as the two criteria set forth in § 54-251 (b) are satisfied. Accordingly, the defendant in the present case retained his statutory right to file an application for an exemption from registration after having been placed on the sex offender registry for approximately seven years.

The state, however, contends that the plain language of § 54-251 (b) requires an individual to file an application for an exemption from registration before the individual is initially required to register as a sex offender pursuant to § 54-251 (a). Specifically, the state asserts that this court should strictly construe the statutory language because § 54-251 (b) is devoid of any language expressly authorizing a court to grant an exemption once the obligation to register has commenced and a court is not permitted to supply omissions in or to add exceptions to a statute. For example, the state claims that in order to accept the defendant's interpretation of § 54-251 (b), this court would have to read into the statute language authorizing the court to " 'terminate' " or to " 'exempt at any time' " an individual from registration if the court were to find that registration " 'is no longer' " required for public safety. In response, the defendant contends that the state propounds an illogical reading of § 54-251 (b) in light of the fact that the state's interpretation would require a court to determine whether an individual poses a risk to public safety at the time of sentencing rather than at a later time when the individual would have the opportunity to present evidence of his or her rehabilitation since the time of initial registration. We disagree with the state's claims.

Despite its contention that a court must construe a statute as written, the state essentially would have us interpret § 54-251 (b) as providing that there is a temporal restriction on the court's authority to grant an exemption. In effect, the state ignores the absence of a temporal limitation and reads into the statute language such as "at the time of sentencing" or "before the obligation to register has commenced." Although, under § 54-251 (a), an individual's obligation to register as a sex offender does not commence until that individual is released into the community, the plain language of § 54-251 (b) indicates that an individual's right to seek an exemption arises upon the entry of the judgment of conviction of § 53a-71 (a) (1) and continues throughout his or her obligation to register. Furthermore, it is evident that § 54-251 (b) contains no provision imposing a temporal limitation on an individual's statutory right to file an application for an exemption from registration. Therefore, the interpretation of the statute that the state

advances would require us to "engraft language onto the statute" limiting the court's authority to grant the exemption to the time before the individual's statutory obligation to register takes effect, which is something we cannot do. *Laliberte* v. *United Security, Inc.*, supra, 261 Conn. 186.

The state further urges this court to examine § 54-251 (b) in relation to other portions of § 54-251. Specifically, the state cites to § 54-251 (a), which requires registration within three days of release into the community or if "in the custody of the Commissioner of Correction, at such time prior to release as the commissioner shall direct," and § 54-251 (d), which requires that "[a]ny person who files an application with the court to be exempted from the registration requirements . . . notify the Office of Victim Services and the Victim Services Unit within the Department of Correction of the filing of such application." The state asserts that reading these two statutory provisions together leads to the conclusion that the legislature intended that an individual file an application for an exemption from registration at the time of the individual's sentencing or while the individual was still incarcerated because, otherwise, it would lead to the absurd result of requiring the defendant in the present case, approximately seven years after his release from confinement and initial registration, to notify *both* the Office of Victim Services and the Victim Services Unit within the Department of Correction pursuant to § 54-251 (d). We disagree.

We are persuaded by the Appellate Court's reasoning on this issue. The Appellate Court reasoned that the state's claim "wrongly assumes that all defendants who are required to register will be imprisoned for their offenses." *State* v. *Obas*, supra, 147 Conn. App. 478. The Appellate Court further explained that "[t]he state's logic fails because registration also is required for offenses that would not require a defendant to be jailed," providing the example of the crime of public indecency in violation of General Statutes § 53a-186, which does not impose a mandatory term of imprisonment and "is sometimes punished only with a fine rather than incarceration . . . ." Id. Furthermore, we note that § 54-250 (10) (A) defines " '[r]elease into the community' " as, inter alia, "any release by a court after such conviction or finding of not guilty by reason of mental disease or defect, a sentence of probation or any other sentence . . . that does not result in the offender's immediate placement in the custody of the Commissioner of Correction . . . ."

Therefore, it is reasonable to believe that some criminal defendants who are required to register as sex offenders will not be sentenced to a period of incarceration, but will still maintain the right to file an application for an exemption pursuant to § 54-251 (b). See *State* v.

*Obas*, supra, 147 Conn. App. 478. We conclude that it is not absurd or unworkable to require a criminal defendant convicted of a crime involving sexual conduct to notify both the Office of Victim Services and the Victim Services Unit within the Department of Correction of the filing of an application for an exemption years after having been released from confinement, as would be the case here. See *Wilkins* v. *Connecticut Childbirth & Women's Center*, 314 Conn. 709, 723, 104 A.3d 671 (2014) ("[i]t is axiomatic that '[w]e must interpret the statute so that it does not lead to absurd or unworkable results' ").

Our review of the plain language of the statute indicates that the legislature intended to allow an individual to file an application for an exemption from registration at any point during the required period of registration. Therefore, we conclude that the Appellate Court properly determined that the trial court had the authority to grant the defendant's application for an exemption in the present case.

## II

The state further contends that, even if § 54-251 (b) allows for an individual to be exempted from registration as a sex offender once placed on the registry, the defendant was precluded from exercising his statutory right to file an application for an exemption from registration because he had entered into a plea agreement with the state that unambiguously required him to register as a sex offender for a period of ten years.[5] Specifically, the state claims that both the state and the defendant were bound by the terms of the plea agreement, and that the trial court improperly disregarded the sanctity of plea negotiations by permitting the defendant to unilaterally seek modification of the term of his sex offender registration after having received the benefit of the agreement.[6] In response, the defendant asserts that: (1) the provision providing that the defendant register for ten years was not a bargained for element of the plea agreement because § 54-251 (a) mandates a ten year period of registration; and (2) the state had the burden to secure the defendant's explicit promise not to file an application for an exemption from registration. We agree with the defendant.

We begin with an overview of the legal principles and standard of review governing the state's claims. This court has previously established that "the guilty plea and the often concomitant plea bargain are important components of [the] criminal justice system. . . . If every criminal charge were subjected to a full-scale trial, the [s]tates and the [f]ederal [g]overnment would need to multiply by many times the number of judges and court facilities." (Citation omitted; internal quotation marks omitted.) *State* v. *Revelo*, 256 Conn. 494, 505, 775 A.2d 260, cert. denied, 534 U.S. 1052, 122 S. Ct. 639, 151 L. Ed. 2d 558 (2001). "As the United

States Supreme Court . . . has stated, however, the benefits of plea bargaining presuppose fairness in securing agreement between an accused and a prosecutor." (Internal quotation marks omitted.) Id., 506.

"[P]rinciples of contract law and special due process concerns for fairness govern our interpretation of plea agreements. . . . Thus, [t]he validity of plea bargains depends on contract principles. . . . Because [plea agreements] implicate the waiver of fundamental rights guaranteed to persons charged with crimes, [however, they] must . . . be evaluated with reference to the requirements of due process. . . .

"When the contract language relied on by the trial court is definitive, the interpretation of the contract is a matter of law and our review is plenary. . . . When evaluating a contract, [w]e accord the language employed in the contract a rational construction based on its common, natural and ordinary meaning and usage as applied to the subject matter of the contract. . . . [When] the language is unambiguous, we must give the contract effect according to its terms. . . . [When] the language is ambiguous, however, we must construe those ambiguities against the drafter. . . . Whether a contract is ambiguous is a question of law over which we exercise de novo review." (Citations omitted; footnote omitted; internal quotation marks omitted.) *State v. Rivers*, 283 Conn. 713, 724–25, 931 A.2d 185 (2007).

It is well established that in cases involving plea agreements, "the drafter of the agreement, the state, generally holds substantially superior bargaining power over the other party to the agreement, the criminal defendant. As the [United States Court of Appeals for the] Second Circuit has explained, [b]ecause the government ordinarily has certain awesome advantages in bargaining power, any ambiguities in the agreement must be resolved in favor of the defendant. . . . Thus, the state, as the drafting party wielding disproportionate power, must memorialize any and all obligations for which it holds the defendant responsible, as well as all promises that it has made for the purpose of inducing the defendant to cooperate. The terms of the agreement should be stated clearly and unambiguously, so that the defendant, in assenting to waive certain fundamental rights, knows what is expected of him and what he can expect in return. Likewise, such clarity ensures that the state knows what it may demand of the defendant and what it is obligated to provide in exchange for the defendant's cooperation." (Citations omitted; internal quotation marks omitted.) Id., 725–26.

In the present case, the state and the defendant entered into an oral plea agreement whereby the defendant agreed to plead guilty to sexual assault in the second degree in violation of § 53a-71 (a) (1) and to give "full and honest testimony" at a related criminal prosecution. In exchange, the state agreed to recom-

mend that the trial court sentence the defendant to ten years imprisonment, suspended after nine months, followed by ten years probation. In addition to the standard conditions of probation, special conditions were imposed, including that the defendant: be evaluated for a sex offender treatment program and, if deemed necessary, to successfully complete such a program; be prohibited from having any unsupervised contact with any child under the age of sixteen years; be prohibited from having any contact, directly or indirectly, with the victim; and register as a sex offender for ten years. The trial court accepted the terms of the plea agreement and sentenced the defendant accordingly.

It is undisputed that the defendant did not explicitly waive his right to file an application for an exemption from registration pursuant to § 54-251 (b) under the terms of the plea agreement. Thus, the sole basis for the state's contention that the terms of the plea agreement prohibit the defendant from filing an application for an exemption from registration is the fact that the plea agreement provided that the defendant "register as a sex offender for a period of ten years." To address the state's claim then, we must examine whether the provision in the plea agreement providing that the defendant "register as a sex offender for a period of ten years" clearly and unambiguously precludes the defendant from seeking an exemption from registration pursuant to § 54-251 (b). "If the language of the contract is susceptible to more than one reasonable interpretation, the contract is ambiguous." (Internal quotation marks omitted.) *Murtha* v. *Hartford*, 303 Conn. 1, 9, 35 A.3d 177 (2011). On the one hand, we find the state's interpretation reasonable—namely, that by stating that he would register for ten years, the defendant agreed not to seek an exemption from registration. On the other hand, given the absence of any mention of the defendant's relinquishment of his statutory right to file an application for an exemption from registration on the record, we conclude that the defendant could have reasonably believed that, so long as he registered as a sex offender upon his release from incarceration and maintained his information on file up-to-date pursuant to the requirements set forth in § 54-251 (a), he remained free to file an application for an exemption from registration pursuant to § 54-251 (b) without violating the terms of the plea agreement. Therefore, we conclude that the provision of the plea agreement that the defendant must "register as a sex offender for a period of ten years" is ambiguous.

The Second Circuit has previously stated that it would "not imply a waiver in a plea bargain that is to be strictly construed against the government." *United States* v. *Podde*, 105 F.3d 813, 821 (2d Cir. 1997). In the present case, the state failed to clearly communicate to the defendant that he was relinquishing his right to file an application for an exemption from registration as

consideration for the state's offering of a reduced charge and reduced sentence. There is no indication in the record that the defendant agreed that his assent to comply with the registration requirements of § 54-251 (a) would constitute a waiver of his right to file an application for an exemption from registration pursuant to § 54-251 (b). Construing the plea agreement in the defendant's favor, we do not infer from the defendant's mere assent to register for the statutory minimum term of ten years that he forfeited this statutory right.[7]

Our conclusion is consistent with this court's previous decision in *State* v. *Rivers*, supra, 283 Conn. 717–18, where the state and the defendant entered into a plea and cooperation agreement, under which "the defendant agreed to plead guilty to kidnapping in the first degree and to cooperate with the state, and the state agreed to make certain sentencing recommendations to the court." As a result, the defendant provided testimony consistent with his prior statement to the police at the probable cause hearing of a codefendant. Id., 718. When the state called the defendant as a witness at the codefendant's trial, however, the defendant invoked his privilege against self-incrimination under the fifth amendment to the United States constitution and declined to testify. Id., 719. Thereafter, the state declared its plea agreement with the defendant to be null and void, asserting that "the defendant's refusal to testify, although a proper exercise of his constitutional rights, nevertheless constituted 'a bad faith breach of the obligations [that] he [had] entered into in the [plea] agreement,' " and that, therefore, the defendant was no longer entitled to the benefits of the agreement. Id., 719–20. Specifically, although the state conceded that there was no express requirement in the plea agreement that the defendant testify, the state asserted that language in the plea agreement implied such an obligation.[8] Id., 728–29. The trial court agreed with the state. Id., 721–22. This court reversed. Id., 716. Relying on the principle that ambiguous language of a plea agreement must be construed against the state, this court concluded that the trial court had improperly read into the agreement an implicit obligation to testify. Id., 729. This court explained as follows: "Unless a plea agreement contains an explicit provision requiring that a defendant fulfill a substantial obligation such as testifying, this court will not require the defendant to do so. Likewise, the state may not claim retroactively that a particular act or omission of a defendant constituted a breach of an agreement when the language of the agreement does not prohibit such an act or omission." Id., 730.

Our interpretation is also consistent with the decisions of other courts that have considered similar issues. See *Innes* v. *Dalsheim*, 864 F.2d 974, 980 (2d Cir. 1988) (refusing to read ambiguous plea agreement as requiring defendant to waive his right to jury trial in event of breach), cert. denied, 493 U.S. 809, 110 S.

Ct. 50, 107 L. Ed. 2d 19 (1989); *United States* v. *Podde*, supra, 105 F.3d 821 (refusing to read ambiguous plea agreement as requiring defendant to waive statute of limitations defense as to original charges upon withdrawal of guilty plea); *State* v. *Rosado*, 92 Conn. App. 823, 827–29, 887 A.2d 917 (2006) (refusing to read ambiguous plea agreement as providing that violation of rules and regulations of alternative incarceration center would constitute breach of plea agreement); *State* v. *Nelson*, 23 Conn. App. 215, 219, 579 A.2d 1104 (1990) (refusing to read ambiguous plea agreement as reserving right for state to reprosecute in event of victim's death), cert. denied, 216 Conn. 826, 582 A.2d 205 (1990), cert. denied, 499 U.S. 922, 111 S. Ct. 1315, 113 L. Ed. 2d 248 (1991).

This court has previously reaffirmed the principle that pretrial negotiations play a "critical role" in the criminal justice system. *State* v. *Revelo*, supra, 256 Conn. 505. We reaffirm this principle again today and note that nothing stated in this opinion should be interpreted as undermining the plea bargaining process. Nevertheless, in light of the plea agreement in the present case, the state may not claim that the defendant was barred from exercising his right pursuant to § 54-251 (b). Accordingly, on the basis of the plain language of § 54-251 (b) and our construction of the ambiguous phrase of the plea agreement in the present case against the state, we conclude that the Appellate Court properly affirmed the trial court's decision granting the defendant's application for an exemption from registration.

The judgment is affirmed.

In this opinion the other justices concurred.

[1] General Statutes § 54-251 provides in relevant part: "(a) Any person who has been convicted or found not guilty by reason of mental disease or defect of a criminal offense against a victim who is a minor or a nonviolent sexual offense, and is released into the community . . . shall, within three days following such release or, if such person is in the custody of the Commissioner of Correction, at such time prior to release as the commissioner shall direct . . . register such person's name, identifying factors, criminal history record, residence address and electronic mail address, instant message address or other similar Internet communication identifier, if any, with the Commissioner of Emergency Services and Public Protection . . . and shall maintain such registration for ten years . . . .

"(b) Notwithstanding the provisions of subsection (a) of this section, the court may exempt any person who has been convicted or found not guilty by reason of mental disease or defect of a violation of subdivision (1) of subsection (a) of section 53a-71 from the registration requirements of this section if the court finds that such person was under nineteen years of age at the time of the offense and that registration is not required for public safety. . . ."

Although § 54-251 has been amended by the legislature since the events underlying the present appeal; see, e.g., Public Acts 2015, No. 15-211, § 5; Public Acts 2011, No. 11-51, § 134; those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

[2] We granted the state's petition for certification to appeal limited to the following issue: "Did the Appellate Court err in finding that the exemption for registration as a sex offender under . . . § 54-251 could be granted, over the state's objection, where the defendant had registered for seven years but had agreed to register for ten years as a part of a plea agreement entered into with the state and accepted by the trial court?" *State* v. *Obas*,

311 Conn. 924, 924–25, 86 A.3d 470 (2014).

[3] The trial court denied the state's request for permission to appeal, but the Appellate Court held under *State* v. *Peeler*, 271 Conn. 338, 857 A.2d 808 (2004), cert. denied, 546 U.S. 845, 126 S. Ct. 94, 163 L. Ed. 2d 110 (2005), that the "[trial] court's denial of the state's request for permission to appeal was improvident" and that appellate review of the state's claims was warranted. *State* v. *Obas*, supra, 147 Conn. App. 476.

[4] Section 54-251 (a) requires, inter alia, that registrants notify the Commissioner of Emergency Services and Public Protection, "without undue delay," of changes to their place of residence, e-mail address, instant message address, employment status, and enrollment status in certain educational institutions. Section 54-251 (a) further sets forth a routine address verification process using the following language: "During such period of registration, each registrant shall complete and return forms mailed to such registrant to verify such registrant's residence address and shall submit to the retaking of a photographic image upon request of the Commissioner of Emergency Services and Public Protection."

[5] The state also claims that the trial court lacked the authority to grant the defendant's application for an exemption from registration because the trial court had accepted the terms of the plea agreement at the time of the defendant's sentencing and, therefore, was bound by the terms of the plea agreement. Specifically, although the state concedes that the trial court is not a party to the plea agreement, the state asserts that the trial court did not have to accept the plea agreement, and that by sentencing the defendant in accordance with the plea agreement, the court became bound by the terms of the agreement and could not subsequently modify its terms. Because we conclude that the terms of the plea agreement in the present case did not bar the defendant from exercising his right to file an application for an exemption from registration pursuant to § 54-251 (b), we need not address this claim.

[6] The state cites to *People* v. *Evans*, 174 Ill. 2d 320, 673 N.E.2d 244 (1996), and *State* v. *Trujillo*, 117 N.M. 769, 877 P.2d 575 (1994), in support of its claim that to allow the defendant to exercise his right under § 54-251 (b) after the execution of the plea agreement at issue in this appeal would be inconsistent with principles of fairness and would damage the plea bargaining process. We do not find these cases to be relevant authority because both of these cases involved direct challenges to the defendants' negotiated sentences, rather than a defendant's exercise of a statutory right to modify a specific, statutorily mandated term of his probation available to the defendant after sentencing, as is the case here. *People* v. *Evans*, supra, 327; *State* v. *Trujillo*, supra, 770.

*Evans* involved two consolidated appeals, where both defendants sought to alter the terms of their sentences by filing motions for sentence reconsideration after having entered into negotiated plea agreements with the state. *People* v. *Evans*, supra, 174 Ill. 2d 327. One defendant filed a motion requesting that the court either reduce his ten year prison sentence or, alternatively, place him in a rehabilitation facility. Id., 322. The other defendant filed a motion for reconsideration, asserting that his sentences were excessive and should be reduced due to his mental disabilities. Id., 323. Unlike the defendants in *Evans*, the defendant in the present case does not challenge the sentence he received as a result of his plea agreement with the state. Rather, as we explained previously in this opinion, as a result of the parties' agreement that the defendant would plead guilty to a violation of § 53a-71 (a) (1), the defendant had a right to file an application for an exemption from registration pursuant to § 54-251 (b) and have that exemption granted at the discretion of the trial court.

Moreover, *Trujillo* is also factually distinct from the present case. In *Trujillo*, the defendant filed a petition for writ of habeas corpus, claiming that the provision in a plea agreement requiring that she successfully complete an in-house drug rehabilitation program violated her constitutional rights. *State* v. *Trujillo*, supra, 117 N.M. 770. Without holding that the defendant's sentence was unconstitutional, the district court issued an order modifying the defendant's probation terms. Id. Unlike in *Trujillo*, the defendant in the present case had the specific, statutory right to file an application for an exemption from registration without filing a motion challenging his guilty plea or resulting sentence.

[7] Although we recognize that "a voluntary and intelligent guilty plea operates as a waiver of all nonjurisdictional defects," because the defendant in the present case does not challenge his underlying conviction of sexual assault in the second degree, this principle does not apply. *State* v. *Johnson*,

253 Conn. 1, 42, 751 A.2d 298 (2000).

[8] In *Rivers*, the state contended that the following language in the plea and cooperation agreement implied a requirement that the defendant testify: "It is understood that in the event [the defendant] becomes a witness at any trial and his testimony is materially different from any statements or information disclosed at this meeting, the [s]tate may and will use [the defendant's] statements at this meeting to impeach or cross-examine [the defendant]. It is also understood that materially different testimony at trial indicates a lack of candor by [the defendant], either in the original statement or at trial, which constitutes a breach of the agreement. The agreement will then become null and void." (Internal quotation marks omitted.) *State* v. *Rivers*, supra, 283 Conn. 728–29.